Thank you, Your Honor, and may it please the Court. I would like to reserve two minutes of my time for rebuttal. All right. The issue in this case is whether the Prison Litigation Reform Act requires a prisoner to You're going to have to keep your voice up or we won't hear you. This doesn't amplify, it just records. Thank you, Your Honor. The issue in this case is whether the PLRA requires a prisoner to exhaust administrative remedies which are not available to him. We submit it does not. In this case, Marella's remedies were rendered unavailable to him due to three circumstances beyond his control. First, while Marella was in the prison, hospital, and infirmary, he had no access to grievance forms or writing materials. Second, while he was in the infirmary, he was medicated and suffering from the injuries from the attack that occurred, and in this way was physically incapacitated and not able to file a grievance. Third, procedural errors made by prison officials rendered the administrative review process unavailable to Marella. First, I'll discuss the lack of access forms and writing materials. For 24 working days after the attack, 33 days in total, Marella was confined either to the prison hospital or to the infirmary. During this time, he had no access to grievance forms or writing materials, as we can see from his consistent statements on his 602 forms in his letter to the Inmate Appeals Branch and in his complaint. Had the magistrate judge issued Marella a proper WIAT notice, there may be a more specific explanation as to why he had no access to these forms. However, no such notice was given, and for that reason alone, we would ask this Court to reverse and remand for further proceedings. What we do have, however, are the consistent statements I've spoken of, and for four reasons, the Edwards Affidavit is insufficient to carry Apelli's burden in this case of proving that Marella's administrative remedies were not available to him. Is, in rejecting a claim as untimely, then, does the prison have to make a determination that he had the opportunity to file within the time constraints? They do, Your Honor, and that did not occur in this case, and that was one way in which a procedural error by the prison officials rendered Marella's administrative review process unavailable to him. So that's their own regulation, is that right? I'm just trying to figure out, or is it the operating manual? That's correct, Your Honor. The regulation that they have to abide by? That's correct. If that were the case, I don't know if it is, but if that were the case, would it excuse exhaustion here, or would it just go back so that that could be determined? Our position, Your Honor, is that if prison officials make a mistake that renders the administrative process unavailable to a prisoner due to the plain language of the statute, the prisoner does not have to exhaust a remedy which is unavailable to him. If the – as I understand, there's also a regulation that the opportunity to file can be extended under certain circumstances. Is that correct? Your Honor, I'm sorry. I'm not familiar with that regulation. How many days was he late? Nine working days, Your Honor. Referring back to the Edwards Affidavit, that is the sole document provided in this case to in some way prove Morella's remedies were unavailable to him, again, for four reasons that is insufficient to carry their burden. First, the affidavit does not even mention the availability of the rights and responsibilities forms which are required to be attached to the 602 forms when filing a grievance. Second, the affidavit does not specifically say when Ms. Edwards conducted her routine visits to check on the availability of the forms or whether any such visit was made during the period Morella was in the infirmary. Third, the affidavit does not contradict or even address Mr. Morella's claims that he had no access to forms, that he, in fact, was denied access to forms, and that he filed as soon as he was physically able to. And finally, it does not say whether Ms. Edwards or anyone else specifically made these forms available to Morella despite the plain language of the statute which requires that administrative  The second way in which Morella's remedies It strikes me that some of these findings should have been made, but was the issue raised before the magistrate judge of whether or not he had the forms and had a pencil to fill them out? Was that raised before the magistrate judge? Your Honor, that was not a finding that the magistrate judge addressed in his findings. I understand, but usually a magistrate judge doesn't make findings on issues that aren't raised, and I just wondered if it was raised before the magistrate judge to make a finding. It was in Morella's complaint, Your Honor. And the magistrate judge found that he had been in the hospital, what, two nights? That's correct, but did not address the length of time he had also been in the infirmary without access to forms as well. The second way in which Morella's administrative remedies were unavailable to him was that during the time he was in the infirmary, he was medicated and suffering from the wounds he'd sustained during the attack, including being stabbed, kicked, and punched. His stab wounds were infected. Therefore, even if the forms were somehow physically present in the infirmary, Terahun again does not carry his burden of proving that Morella was able to file a grievance due to his incapacitation. Because of physical incapacitation and the lack of access to the forms, Morella's administrative remedies were unavailable to him, and the PLRA cannot be read to require exhaustion of unavailable remedies. The third way, as we've touched on a little already, that Morella's remedies were unavailable to him was when the prison officials made two procedural errors rendering the administrative review process unavailable to Morella. The first, as we discussed, was the requirement to investigate into whether Morella had even had a chance to, had even had an opportunity to timely file before screening the grievance, which did not occur. The second requirement was that when Morella attempted to appeal the screening decision, he was required to be provided clear instructions of information needed or the appeal route to be taken, which also did not happen. And when that did not happen, Morella had no instructions of how to proceed, and therefore the administrative review process, any further remedies were unavailable to him. You might want to save the remaining time. Did he appeal to the third level? Ultimately, he did, Your Honor, even though that was superfluous to him at that time. But he did write a letter to the appeals branch. The director returned a reply to him that stated, Your grievance was screened as untimely as he already knew. And, in fact, that letter informed him he then had six months to file suit if he wished to proceed. Thank you. You may be put in a bad position where the record is going to say that the student is going to win a case. Can you tell us where he's wrong? I certainly hope that's not the case, Your Honor. Good morning. May it please the Court. Deputy Attorney General Philip Lindsay appearing on behalf of Defendant Appellee Prison Officials. Your Honor, I do want to address that issue with the Court. And what the plaintiff is asking this Court to do is to overturn some findings of fact that the district court had made, findings of fact which this Court should review for clear error, and findings of fact that this Court should give deference to. This is, of course, one of the points that's also raised in the plaintiff's reply brief regarding what is the appropriate standard for a district court to apply to a motion to dismiss based on lack of exhaustion, and what is the appropriate standard on the appellate review. In this case, however, the plaintiff asserts in the reply brief that this is an issue of first impression with this Court. That, however, is not the case, given that we have Ninth Circuit precedent on the appropriate standard to apply on a motion to dismiss for lack of exhaustion. That includes the Wyatt v. Terhune case from 2003. That case also cited a case called Ritza v. International Longshoremen's Union from 1988, which involved the lack of exhaustion of nonjudicial remedies. And even in the Ritza case 20 years ago, the Court stated that the appropriate method for filing a motion to dismiss based on lack of exhaustion of nonjudicial remedies is to do it as an unenumerated Rule 12b motion, and the standard that the district court applies to that is the standard that the district court has the ability to decide disputed issues of fact. And because the district court has the ability to decide disputed issues of fact, that, therefore, is reviewed by clear error from this Court. The plaintiff in this case is asserting that this Court should adopt a different standard, a different standard from Ritza and a different standard that was enunciated in Wyatt. And they're asking this Court to look by analogy to a case called Murphy v. Snyder, which is a 2004 case, a case that came out a year after Wyatt was pronounced. And they're asking this Court to apply certain presumptions and have the district court apply certain presumptions to a motion to dismiss back based on lack of exhaustion. Basically, in that case, it was a case involving improper venue. It was a case involving a personal injury by an employee. The employee sued their employer for a personal injury. The employee filed suit and the defendant filed a motion to dismiss for improper venue under Rule 12b, under Rule 12b-3. In that case, the Court did state that was a case of first impression as to what the appropriate standard was to apply to a motion to dismiss for improper venue filed under Rule 12b-3. And there the Court had two options. The Court stated either the district court has the ability to decide disputed issues of fact, which if it does, then the court of appeal is supposed to give deference to those findings of fact. Or the other option is that the court is to, by analogy, apply the same inferences that are applied to a Rule 56 motion for some reason. I'm not so concerned about the standard of review because I think we have well in hand what it is. Here's what bothers me is that the district court, I guess that's actually magistrate judge, makes a determination that there's no exceptions to the filing period exist. And that's more of a legal determination. And the difficulty is within the California regulations and the operating manual, there's two things. One, it says that you have to comply with the rules, of course, on timeliness. And the time limits for submitting the appeal are exceeded. You have to make a determination and the appellant had the opportunity to file within prescribed time constraints. And then the manual goes on to say the appeals court must ensure that the I don't know if you call that an exception or not. It seems to me just to be a requirement. But it does seem that the magistrate judge was operating under a misapprehension as to the administrative process. Would you address that? Yes, Your Honor. The district court and the magistrate judge did find that, as is stated by Woodford v. Noe, that there are no exceptions to the exhaustion requirement. And that under Woodford, it is incumbent upon the inmate to properly exhaust within the time frames that are provided. I'm not aware of any case law, however, that states that every administrative operational procedure that requires an appeals coordinator to take action, therefore becomes an element of the defendant's burden in order to show that the plaintiff failed to properly exhaust. Well, isn't the burden on the State on exhaustion to begin with? It is, Your Honor. Okay. And so it's for whatever reason the State of California has decided to say that compliance with the regulations means that you were, you know, that the time limit was exceeded and you had the opportunity. So that seems to me to be exhaustion is a State issue. It's not really a Federal issue, except that the peculiarities of it are really a State issue. And so why, in the California system, there's been no finding in any of the rejections that he had the opportunity to exhaust. It seems that the State had followed its own regulations and, in any event, hadn't met its burden under its own rules. Well, again, Your Honor, I'm not aware that simply because there's an internal operations procedure that advises the appeals coordinator how to process the appeal, that that in and of itself can be translated into a necessary legal element. And the Court stated correctly that it is the defendant's burden to raise and to plead and to prove the exhaustion issue and to show that the plaintiff failed to exhaust. And as Judge Wallace mentioned, that's basically putting on the defendant the burden to prove a negative, to show that the plaintiff actually did not do something he was supposed to do. We know he was late. And then the question is whether he had the opportunity, you know, whether he was frustrated in his opportunity to exhaust because of some outside circumstances. And that doesn't seem to be credited or dealt with in this appeals process here. So how is it, you know, he said he explains why he took more than 15 days to file kind of over and over, but that doesn't seem to be dealt with anywhere. So that's what's missing, it seems, from the administrative record on exhaustion. But there is additional evidence in the record that does support the district court's conclusion that the plaintiff failed to timely exhaust, for instance. Well, but, you see, that the district court doesn't really deal with it. I mean, if you read it, it's pretty cursory. They basically say he was in the hospital for two days. That's true. I don't think anybody could challenge that. He was in the hospital for two days. But that doesn't really tell the story or answer the question. So I don't think anything the district court said in here, you know, it's pretty unassailable because, but he doesn't deal with the issue. That's the problem, it seems to me. And, Your Honor, even if the court takes that view of the district court and the magistrate judge's opinion, nevertheless, this Court can still affirm if the conclusion was correct based on the entirety of the record. And in this case, the entirety of the record still supports the conclusion that the plaintiff made this argument below. And as the Court pointed out, it was rejected in the R&R when Magistrate Judge Bataglia stated, however, the evidence presented shows that the plaintiff was only in an outside hospital for two days. So, therefore, it was considered by the Court, and, therefore, it was rejected by the Court. There's other instances in the record that supports the district court's finding that the plaintiff failed to exhaust. And one thing that the plaintiff never alleges is that although he was in the hospital and although he was in the infirmary, he never alleges that at any time during this entire proceeding did he ever ask any prison official to provide him with a form. He states that he was in the infirmary and the forms were not available, but it's a reasonable inference to conclude that he was being taken care of on a daily basis by the medical staff. Yet he never alleges on one occasion that he requested a form from the medical staff. Additionally, five days after the alleged incident, the plaintiff was seen by the Institutional Classification Committee regarding the incident, which is the basis of the complaint. The plaintiff never alleges that he asked any of those members of the Institutional Classification Committee to provide him a form to file an appeal. And, secondly, the record also shows that on that same day, five days after the incident, the plaintiff was seen by a correctional officer who informed him. And if all this, there's no sense that there's any, there's no findings on any of this. And so what you have is it seems that it doesn't appear that it was considered. That's what you can't figure out from this skinny opinion on that point. And that's where I'm having some difficulty. And I agree with you if we could, if we could figure out from the record, you know, the answer, but I don't think we're supposed to be kind of weighing the Do you agree with that? Well, I agree. If there was a problem, we'd send it back. But I don't think we would substitute ourselves for the district court in being a weigher of evidence. I agree with that, Your Honor. However, I think if the record is clear and that it does support the ultimate conclusion of the district court, then this court does have the ability to affirm. And I think that's the record that we have in this case. Again, the burden is the defendant's to raise. But once the defendant raised that, the plaintiff has to rebut it. In this case, the plaintiff simply didn't provide enough information to fully rebut the fact that the plaintiff had failed to timely exhaust. Thank you. Thank you, Your Honor. I think you have about two minutes for rebuttal. Two. You'll put the clock at two minutes. Thank you, Your Honor. Two brief points. First, I would like to just reemphasize that there were only two historical findings made, findings of fact, made by the magistrate judge. One, that Morella's grievance was nine days late, and two, that he spent only two days in the hospital. There are no other factual findings made. I would also respectfully like to point out an incorrect statement made by the plaintiff. The plaintiff did not say he was denied access to the forms. On page 95 of the excerpt of the record, paragraph 48, Morella's grievance was nine days late. Strong, you may have misunderstood him. He said he didn't, he doesn't indicate that he asked for the form and nobody gave them to him. He does say the forms were not available, but he doesn't say he requested them and was denied. The request was denied. Your Honor, in paragraph 48, he does say he was denied the forms. Thank you. Thank you. Does he say he requested them and the request was denied? He does not say request, Your Honor, just that he was denied the forms. Thank you. Thank you. The case just argued and submitted, Morella v. Terhune. I'd like to thank you, Mr. Strong, compliment you on your argument. I'll compliment Mr. Lindsey also, although he's probably had a little more experience in doing this as evidenced by his argument as well. But we appreciate the pro bono counsel from the University of Montana. We have a number of cases where the university has provided counsel, and we appreciate it. With this, we're adjourned for the morning. And I'll just say one half word. We're going to decide the case on the record, on what it shows, and it will have nothing to do with the quality of the argument, so either side. Thank you, Your Honor. Whether you win or lose, you don't have to say who was on the other side. Yes.
judges: Wallace, Farris, McKeown